IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

RYAN JAMES O'TOOLE,

        Plaintiff,

    vs.

DAN DANAHER, Doctor, in his individual
capacity only; and TEENA LENGER,
Medical Director, in her individual capacity
only;

        Defendants.

**4:24CV3067**

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Ryan James O'Toole's ("O'Toole" or "Plaintiff") Amended Complaint, Filing No. 10, filed in response to the Court's previous Memorandum and Order (the "Initial Review Order"), Filing No. 9. Also before the Court are O'Toole's Motion to Appoint Counsel, Filing No. 11; his first Motion to Add Evidence, Filing No. 12; his Motion for Case Progression, Filing No. 13; and his second Motion to Add Evidence, Filing No. 14. The Court addresses O'Toole's Motions below and concludes that the Amended Complaint fails to state a claim and is subject to dismissal under 28 U.S.C. §§ 1915(e)(2) and 1915A.

## I. MOTIONS TO ADD EVIDENCE (Filing Nos. 12 & 14)

The Court will construe both of O'Toole's Motions to Add Evidence as requests to supplement his Amended Complaint. The first Motion, Filing No. 12, includes updated allegations on his symptoms and several of his requests for treatment. The second Motion, Filing No. 14, includes copies of several Inmate Interview Request (IIR) forms, apparently intended to substantiate his allegations, and allegations about Nebraska Department of Correctional Services (NDCS) policies on infectious diseases.

Accordingly, for purposes of reviewing the Amended Complaint, the Court will consider the allegations and documents included in the Motions, Filing No. 12 and Filing No. 14, as supplemental to the Amended Complaint.

## II.  MOTION FOR CASE PROGRESSION (Filing No. 13)

O'Toole's Motion for Case Progression seeks an update on the status of his case and an accounting of the amount he still owes the Court in filing fees.  Filing No. 13.  With this Memorandum and Order, the Court grants O'Toole's request for status.  The Court will also direct the Clerk's Office to provide O'Toole a record of his payments and remaining balance.

## III.  RENEWED MOTION TO APPOINT COUNSEL (Filing No. 11)

As stated in the Initial Review Order, there is no constitutional or statutory right to appointed counsel in a civil case. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (per curiam).  A district court "may request an attorney to represent" an indigent civil litigant, 28 U.S.C. § 1915(e)(1), but it has a "good deal of discretion" in deciding whether to do so, *Chambers v. Pennycook*, 641 F.3d 898, 909 (8th Cir. 2011).  "Relevant criteria for determining whether counsel should be requested include the factual and legal complexity of the case, the plaintiff's ability to investigate the facts and to present the claims, and the presence or absence of conflicting testimony." *Recca v. Omaha Police Dep't*, 859 Fed. Appx. 3, 4 (8th Cir. 2021) (unpublished) (citing *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996)); *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). O'Toole asserts that counsel is necessary because he does not know the proper or correct way to finish the process of this case.  As a prisoner, O'Toole understandably faces challenges representing himself, but "most indigent prisoners will face similar

2

challenges." *See Recca*, 859 Fed. App'x at 5 (citing *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018)).  Having considered the factors outlined above, the request for the appointment of counsel will again be denied.

## IV.  REVIEW OF AMENDED COMPLAINT

O'Toole, an inmate at the Nebraska State Penitentiary, brings this action under 42 U.S.C. § 1983 against Defendants Dan Danaher and Teena Lenger.  Filing No. 10 at 1. O'Toole alleges he received constitutionally inadequate medical care for his recurring skin infections.  *See Id.* at 1.  Though not specified in the Amended Complaint, the Initial Review Order concluded that Defendants could only be sued in their individual capacities. *See* Filing No. 9 at 10.  Thus, the Court presumes that Defendants are sued in their individual capacities.  The Court now conducts an initial review of O'Toole's Amended Complaint to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

### Summary of Amended Complaint

On January 23, 2024, O'Toole asked medical staff about pains he was experiencing from infected spots on his body.  Filing No. 10 at 1.  He wrote to medical personnel on January 12, 2023, about pain caused by his clothes rubbing on his infected spots, and how that pain caused him not to receive any sleep.  *Id.* at 1.  On October 4, 2023, O'Toole also submitted an informal grievance about his other grievances not receiving a timely response.  *Id.* at 1-2.  He also stated that his skin infections had long been known to NDCS medical staff.  *Id.* at 2.  A unit manager, not a doctor, responded to the informal grievance, and stated that O'Toole had been seen multiple times by an "NSP provider."  *Id.*

3

O'Toole then filed a Step One Grievance, again describing the problem with the infected areas and stating that the medication given to him was turning his eyes and his skin yellow. *Id.* O'Toole asked the medical staff to let him see a doctor and "not a provider" to help him receive the proper medication and proper treatment. *Id.* O'Toole reasoned that medical personnel did not culture any infected areas to figure out the correct medication or proper way to treat the infections. *Id.* The response to Step One Grievance stated that if O'Toole had any more spots/infections then he should write a kite/IIR to medical and medical would draw and culture the infected spot. *Id.* "Medical" also stated that his "concern has been investigated." *Id.*

O'Toole filed a Step Two Grievance, invoking the NDCS rule book—given to inmates upon arrival to the prison system—which states that inmates will receive community standard health care. *Id.* at 3. O'Toole stated in his Step Two Grievance that he was not receiving such care. *Id.* In the Step Two Grievance, O'Toole also requested specialized soap that would treat the infection and asked why he had to endure inadequate medical care. *Id.* O'Toole received a response to the Step Two Grievance from the "Central Office, the Director's Designee," stating that a special soap was not needed at that time. *Id.* O'Toole alleges he cannot afford to purchase his own hygiene supplies while also having to purchase items such as his own specialized shoes for individuals with diabetes. *Id.* at 4. That he is forced to purchase these items, according to O'Toole, is further evidence of deliberate indifference to his medical needs. *Id.*

**First Supplement to Amended Complaint**

O'Toole's first Motion to Add Evidence, Filing No. 12, construed as a motion to supplement, provides additional allegations and evidence of new infections and allegedly

4

inadequate responses.  O'Toole states that, in April 2025, he developed another infected spot on his upper back.  Filing No. 12 at 2.  Construed liberally, O'Toole indicates that he sent an IIR to medical personnel about the new infected spot but did not receive a response.  *Id*.  However, O'Toole also states that he was given antibiotics for the infection and was not asked if medical personnel could do a culture on any of O'Toole's infections.  *Id*.  He claims that he still had not received body cleanse soap and was using "disinfection soap," as directed, but continued to develop new infection spots.  *Id*.  He argues this shows he was not receiving the community standard of care.  *Id*.

On May 26, 2024, O'Toole sent another IIR to Defendant Lenger, advising her of the rules and laws requiring NDCS to provide community standard health care, and asking why he had not received community standard health care for his skin infections.  *Id*. at 7.  The response indicates that O'Toole's request was "sent to medical director on 5/31/24" and would "send response when received."  *Id*.

On July 17, 2024, O'Toole sent another IIR to Medical, stating that he had two more infected spots on his back, near his belt line.  *Id*. at 6.  O'Toole stated that the infected spots needed to be "looked at by a doctor."  *Id*.  The response, on July 17, 2024, simply states "nurse triage."  *Id*.

On July 19, 2024, O'Toole submitted an IIR to Medical asking why he could not receive the "body cleanse" even though he had been told that he could.  *Id*. at 4.  O'Toole stated that he had another infected spot but could not treat it because he had not received the body cleanse.  *Id*.  The response stated that the cleanse was "no longer on Forumulary," and directed O'Toole to purchase benzoyl/peroxide wash" from the prison canteen.  *Id*.

On July 28, 2024, O'Toole sent an IIR stating that he did not know how to order benzoyl peroxide wash at the prison canteen because there was no such item at the canteen. *Id.* at 5. O'Toole asked for an explanation as to how he could order something that the canteen does not have. *Id*. The response, dated July 30, 2024, told O'Toole to "ask canteen when ordering." *Id*.

In sum, O'Toole claims that throughout his time in NDCS custody, he has suffered from skin infections, "staff, MRSA, or other infections." *Id.* at 3. He claims that his infections keep occurring and either nothing or nothing appropriate is being done to stop his infections. *Id*. O'Toole requests that the Court look deeper into the situation to see "why medical staff don't know or don't want to administer the proper medication." *Id*.

**Second Supplement to Amended Complaint**

O'Toole's second Motion to Add Evidence, Filing No. 14, construed as a motion to supplement, provides additional IIRs he submitted about the infections on his skin. On June 5, 2025, O'Toole sent an IIR to Medical stating that he had another infection on the back of his neck. *Id.* at 3. O'Toole stated that the infection needed "to be properly taken care of instead of putting a bandage on it." *Id*. The response indicated that a chronic care visit was scheduled and the matter could be discussed at that time. *Id*.

On July 2, 2025, O'Toole wrote another IIR to Medical stating he was writing to "someone who cares about the infectious disease I had (MRSA)." *Id.* at 4. He stated that "all that was accomplished was antibiotics" and that there were no check-ups "after the situations were healed." *Id*. He alleged in the IIR that Medical failed to follow policy when it did not perform a follow up on his eleven infected areas, when it failed to provide proper medication, and when it failed to culture his infections to figure out why O'Toole kept

6

developing infections.  *Id*.  He also stated that Medical "denies any wrongdoing" and falsified documents.  *Id*.  The response indicated that the IIR was discussed during a sick call on July 2, 2025.  *Id*.  Another portion of the response, dated July 3, 2025, also explained that O'Toole could not use hibicleus soap due to its flammability.  *Id*.  An illegible portion of the response appears to describe a circumstance where the hibicleus soap could be used at the nurse's station.  *See Id*.  It also instructed O'Toole to use Dial bar soap that would be available at the canteen.  *Id*.

Later on July 3, 2025, O'Toole wrote another IIR requesting an appointment to use the hibicleus soap.  *Id.* at 5.  To support his request, O'Toole referenced the response to the July 2, 2025, IIR, which stated O'Toole could "use the hibicleus soap in Medica[l] at the nurse's station."  *Id*.  The undated response stated that "we don't do whole body showers and hibicleus daily."  *Id*.

On September 11, 2025, O'Toole submitted another IIR, stating that he had "YET ANOTHER spot on my back."  *Id.* at 6 (emphasis in original).  The IIR stated that it may be another infected spot and implored, "I KEEP ON GETTING FIGURE THIS PROBLEM OUT!! SINCE YOU WON'T STOP [FROM] HAPPENING AGAIN!!!"  *Id* (emphasis in original).  The response, dated September 12, 2025, states that O'Toole was seen in the clinic.  *Id*.

Neither the Amended Complaint nor any of its supplements state a demand or prayer for relief other than to have the courts "look into the matter."  *See* Filing No. 12 at 3.  However, in his original complaint, O'Toole sought $100,000 in damages due to neglect of medical care and for medical staff not properly taking care of his infection.  Filing No. 1 at 5.

7

## A.  Standards on Initial Review

The Court is required to review prisoner and in forma pauperis complaints to determine whether summary dismissal is appropriate.  *See* 28 U.S.C. §§ 1915(e) and 1915A.  The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).  Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).  This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004).  However,

8

even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

## B.  Discussion

Liberally construing O'Toole's Amended Complaint, this is a civil rights action brought under 42 U.S.C. § 1983.  To state a claim under section 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute, and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Construed liberally, O'Toole's Amended Complaint alleges Defendants violated his Eighth Amendment right to be free from deliberate indifference to his serious medical needs.  However, O'Toole's Amended Complaint fails to state a claim because it does not sufficiently allege wrongdoing by either Defendant, nor does it state facts sufficient to support a constitutional violation.

### 1.  *Defendants' Personal Involvement*

O'Toole failed to state individual capacity claims against Defendants Danaher or Lenger in the original Complaint because he failed to allege any connection between either Defendant and O'Toole's alleged constitutional injuries, much less allege facts that showed their actions amounted to deliberate indifference. *See* Filing No. 9 at 7.  O'Toole's alleged only reference to either remaining Defendant was that he was seen by both at some point during his treatment. *See* Filing No. 1 at 5.  Nevertheless, the Court granted O'Toole leave to amend the Complaint to state facts that supported a claim against Defendants.

9

As stated in the Initial Review Order, O'Toole is required to allege each individual defendant's personal involvement in the alleged constitutional violation. *Kingsley v. Lawrence Cnty., Missouri*, 964 F.3d 690, 700 (8th Cir. 2020). To show personal involvement, Plaintiff must allege the Defendants were not only "aware of facts from which the inference could be drawn that a substantial risk of serious harm existed," but that they "also dr[e]w the inference." *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Davis v. Oregon Cty.*, 607 F.3d 543, 548-49 (8th Cir. 2010)). "An inmate must demonstrate that a prison doctor's actions were 'so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.'" *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1240-41 (8th Cir. 1997)).

The Amended Complaint and its supplemental materials contain even fewer allegations about either Defendant's personal involvement. Neither the Amended Complaint nor any of the supplemental materials even mention Danaher. The lone reference to Lenger is that, on May 26, 2024, O'Toole sent an IIR to Lenger. Filing No. 12 at 7. The IIR advised Lenger of the rules and laws requiring NDCS to provide community standard health care and asked why he had not received community standard health care for his skin infections. *Id*. Even assuming this IIR made Lenger aware of some of O'Toole's complaints, there is no allegation that she was aware of a substantial risk to O'Toole or that her actions were so inappropriate that they amounted to maltreatment or a refusal to provide essential care. Accordingly, O'Toole has not sufficiently alleged either Defendant's personal involvement in any constitutional wrongdoing.

10

### 2. Sufficiency of Deliberate Indifference Claim

Even ignoring the lack of allegations against either Defendant, the Amended Complaint fails to state a claim for deliberate indifference. Under the Eighth Amendment's prohibition against cruel and unusual punishment, prison officials are forbidden from "unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). A claim of deliberate indifference to medical needs is described as carrying both an objective and subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

In a deprivation of medical care case, the inmate must show (1) an objectively serious medical need; and (2) the defendants actually knew of the medical need but were deliberately indifferent to it. *See Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010); *Jones v. Minnesota Dep't of Corr.*, 512 F.3d 478, 481–82 (8th Cir. 2008); *Albertson v. Norris*, 458 F.3d 762, 765 (8th Cir. 2006); *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). "A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

For the first element, O'Toole alleges that he suffered from ongoing "staff, MRSA, or other infections." Filing No. 12 at 3. O'Toole's allegations suggest that he has received ongoing treatment for the infections throughout his time in custody. O'Toole's allegations demonstrate that not only did he complain about the infections, but that prison medical

11

staff acknowledged the infections.  The Court concludes that, for the purposes of initial review, the objective component is met.

The subjective component requires O'Toole to plead that each defendant acted with a sufficiently culpable state of mind.  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).  The Plaintiff must show a prison official knew of and disregarded the objectively serious medical need.  *Roberson v. Goodman*, 293 F. Supp. 2d 1075, 1080 (D.N.D. 2003), *aff'd*, 114 F. App'x 772 (8th Cir. 2004) (citing *Robinson v. Hager*, 292 F.3d 560, 564 (8th Cir. 2002); *Miller v. Schoenen*, 75 F.3d 1305, 1309 (8th Cir. 1996) (citing *Estelle*, 429 U.S. at 105)).  A decision to initially administer conservative treatment does not necessarily constitute deliberate indifference.  *See, e.g., Fourte v. Faulkner Cty., Ark.*, 746 F.3d 384, 386 (8th Cir. 2014) (jail physician and nurse were not deliberately indifferent when they began logging inmate's daily blood pressure after inmate complained, when they delayed prescribing medication after several high readings, and when they failed to write a second prescription immediately after the first one went missing); *Jenkins v. Cty. of Hennepin*, 557 F.3d 628, 632 (8th Cir. 2009) (holding defendant who decided to postpone x-ray based on medical judgment that injury was not urgent entitled to summary judgment); *Blondheim v. County of Olmsted*, 47 Fed. App'x 766 (8th Cir. 2002) (unpublished) (doctors at correctional facility were not deliberately indifferent by treating inmate's torn ACL conservatively over 4 years, mainly with Tylenol and ace bandages, even though they knew outside orthopedic surgeon had recommended surgery).  Differences of opinion, mistakes, and even medical malpractice do not meet the exacting standard of deliberate indifference.  *See Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) ("At best, [the plaintiff's] allegations state a difference in opinion between himself

12

and his doctors or allege a mistake in classification or treatment. Neither differences of opinion nor medical malpractice state an actionable Constitutional violation.").

Even construed liberally, O'Toole's allegations do not establish the subjective component of a deliberate indifference claim. While the Court is sympathetic to O'Toole's frustration over the repeated return of painful skin infections, his allegations reflect a disagreement about his treatment, not an actionable Constitutional violation. O'Toole's most consistent complaints include that prison officials failed to culture his sores, *see, e.g.*, Filing No. 10 at 2; Filing No. 12 at 2; Filing No. 14 at 4, that he did not receive proper medication, or was prevented from using special soap to remove bacteria from his skin, *see* Filing No. 10 at 4; Filing No. 14 at 4-5. However, his allegations also show that prison officials continued to acknowledge O'Toole's complaints and attempted to treat him. *See* Filing No. 12 at 7; Filing No. 14 at 4, Filing No. 14 at 6. There is no allegation that, for example, NDCS medical staff completely ignored him, failed to administer prescribed medication, or failed to follow a doctor's orders. In sum, although O'Toole is understandably frustrated that his infections continue to appear, his own allegations fail to suggest that prison officials in general, let alone the named Defendants, deliberately disregarded his serious medical need. Without more factual support, Plaintiff's allegations do not meet the stringent standard for stating a plausible claim for deliberate indifference.

## V. CONCLUSION

O'Toole's Amended Complaint fails to assert a recognizable section 1983 claim under the Eighth Amendment or any other constitutional provision. Thus, no claim is stated upon which relief may be granted and O'Toole's Amended Complaint is subject to

dismissal under 28 U.S.C. § 1915A. Accordingly, this action will be dismissed without prejudice pursuant to 28 U.S.C. § 1915A and without leave to amend as the Court concludes amendment would be futile.

IT IS THEREFORE ORDERED:

1.    O'Toole's Motion to Appoint Counsel, Filing No. 11, is denied without prejudice to reassertion.

2.    O'Toole's Motions to Add Evidence, Filing No. 12; Filing No. 14, construed as motions to supplement the amended complaint, are granted consistent with this Memorandum and Order.

3.    O'Toole's Motion for Status, Filing No. 13, is granted and the Clerk's Office is directed to send O'Toole a record of his payments and outstanding balance.

4.    This action is dismissed without prejudice.

5.    The Court will enter judgment by a separate document.

Dated this 6th day of March, 2026.

BY THE COURT:

Joseph F. Bataillon
Senior United States District Judge

14